361 A.2d 274

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Queen COOK, a/k/a Queene Cook, and Wilbert James Williams.**

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Darryl FULTON.**

Supreme Court of Pennsylvania.

Argued Sept. 22, 1975.

Decided July 6, 1976.

John J. Hickton, Dist. Atty., Robert L. Eberhardt, Louis R. Paulick, Asst. Dist. Attys., Pittsburgh, for appellant.

John J. Dean, John H. Corbett, Pittsburgh, for appellee.

Frederick R. Nene, Asst. Atty. Gen., Pittsburgh, for amicus curiae.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX, and MANDERINO, JJ.

## OPINION

O'BRIEN, Justice.

These appeals arise from an order of the Court of Common Pleas of Allegheny County, Criminal Division, which declared § 5502 of the Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 C.P.S.A. § 5502, effective June 6, 1973, unconstitutional. The Commonwealth appealed the decision to the Superior Court and the matter was subsequently transferred to this court for decision.[1]

The facts surrounding this appeal are as follows. On September 14, 1973, appellees, Queen Cook, Wilbert James Williams and Darryl Fulton, were arrested following a disturbance in Wilkinsburg Borough. As a result of the disturbance appellees were indicted on the following four counts: (1) Riot; (2) Resisting arrest or other law enforcement; (3) Failure of disorderly persons to disperse upon official order; and (4) Obstructing administration of law or other governmental function.

On January 23, 1974, the court below granted appellees' motion to quash as to count three of the bill of indictment, the failure of disorderly persons to disperse upon official order. The court below then sustained a demurrer to all the remaining counts as to appellee Williams, and to the second and fourth counts as to appellees Fulton and Cook. At the end of the trial, the court below found Fulton and Cook not guilty of the remaining riot count of the indictment. The Commonwealth filed an appeal to Superior Court, contesting the quashing of

1. These appeals were originally scheduled for argument at our March, 1975 session, but because of noncompliance with Pa.R. Crim.P. 235, the Attorney General of the Commonwealth not having been notified, this case was rescheduled and argued at our September, 1975 session.

the indictment and the declaring of § 5502 as unconstitutional. The Superior Court certified the case to this court for resolution of the constitutional issue.

The Commonwealth argues that the court below erred in declaring § 5502 of the Crimes Code unconstitutional on the grounds of vagueness. The record in the instant case reveals that the statute was declared unconstitutional pursuant to an *oral* motion to quash the indictment and, therefore, no facts appear on the record concerning the alleged violation of § 5502 of the Crimes Code.[2] Section 5502 of the Crimes Code reads:

> "Where three or more persons are participating in a course of disorderly conduct which causes or may reasonably be expected to cause substantial harm or serious inconvenience, annoyance or alarm, a peace officer or other public servant engaged in executing or enforcing the law may order the participants and others in the immediate vicinity to disperse. A person who refuses or knowingly fails to obey such an order commits a misdemeanor of the second degree."

In § 5502, an actor is in violation of the section if, when three or more persons are engaged in "disorderly conduct,"[3] which may cause, or may reasonably be expected to cause, "substantial harm or serious inconvenience, annoyance or alarm," a police officer or other public official acting within the scope of his authority orders the participant and others in the area to disperse and such actor refuses to obey such order, he or she is guilty of a misdemeanor of the second degree.

The gravamen of the section is the failure to obey an order by a police officer or other public official to dis-

2. The above procedure is in clear contravention of Pa.R.Crim.P. 304 concerning written pretrial applications. Given our disposition of this case, we do not reach the propriety of such an oral motion.

3. See Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1, et seq., 18 C.P.S.A. § 5503, for definition of "disorderly conduct."

perse when three or more persons are engaging in a "course of disorderly conduct."

In *Commonwealth v. Heinbaugh*, 467 Pa. 1, 354 A.2d 244 (1976), in deciding the constitutionality of Pennsylvania's "open lewdness statute," [4] the court, in articulating the standard of review for constitutional attacks concerning vagueness, stated:

> ". . . Absent the assertion of an infringement of First Amendment freedoms, the specificity of a statute must be measured against the conduct in which the party challenging the statute has engaged. As the Supreme Court of the United States has but recently put it,

>> 'It is well established that vagueness challenges to statute which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand. [citation omitted]' *United States v. Mazurie*, 419 U.S. 544, 95 S.Ct. 710, 714, 42 L.Ed. 2d 706, 713 (1975).

> "See also Comment, Recent Supreme Court Developments of the Vagueness Doctrine, 7 Conn.L.Rev. 94, 100 (1974); Note, The Void for Vagueness Doctrine in the Supreme Court, 109 U.Pa.L.Rev. 67 (1960)."

This record presents no facts concerning appellees' alleged violation of § 5502, and the colloquy preceding the trial court's ruling fails to reveal the grounds for appellees' claim of "vagueness."

Therefore, no First Amendment claims having been articulated by either the court below or the appellees, we cannot decide the constitutionality of § 5502 in a factual vacuum and, therefore, we vacate the order of the court below and remand the case for further proceedings consistent with this opinion.

---

4. Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1, et seq., 18 C.P.S.A. § 5901.

Order of the Court of Common Pleas of Allegheny County, Criminal Division, is vacated. Case remanded for proceedings consistent with this opinion.

POMEROY, J., joins in this Opinion and filed a Concurring Opinion in which NIX, J., joined.

ROBERTS, J., filed a Dissenting Opinion in which JONES, C. J., joined.

MANDERINO, J., filed a Dissenting Opinion.

POMEROY, Justice (concurring):

I join in the Opinion of Mr. Justice O'Brien and in the decision to vacate the ruling of the trial judge and to remand the case for further proceedings. I add this separate opinion only to explicate more fully why I feel such a remand is required.

Appellees were indicted, *inter alia*, for failing to disperse upon official order in violation of Section 5502 of the Pennsylvania Crimes Code, 18 Pa.C.S. § 5502. That statute authorizes the police to issue a dispersal order "[w]here three or more persons are participating in a course of disorderly conduct which causes or may reasonably be expected to cause substantial harm or serious inconvenience, annoyance or alarm . . ."[1] Prior to

1. The count of the indictment which charged appellees with failure to disperse was cast in the general language of § 5502:

"3rd COUNT. AND THE GRAND JURY AFORESAID by this Indictment DOES FURTHER PRESENT That the said QUEEN COOK as aforesaid and WILBERT JAMES WILLIAMS, on the day and year aforesaid and in the County aforesaid, together with two or more persons whose identity is to this Inquest unknown, were then and there engaged and participating in a course of disorderly conduct which caused or could reasonably be expected to cause substantial harm or serious inconvenience, annoyance or alarm, and while so participating in said course of conduct as aforesaid, the said QUEEN COOK as aforesaid and WILBERT JAMES WILLIAMS unlawfully did then and their refuse and knowingly fail to obey an official order to disperse as such participant therein given by the said Joseph Terry and Dominick Mangano, as such police officer and

trial, appellees made an oral motion to quash the indictment on the ground that § 5502 is facially unconstitutional. On the basis of a short oral argument and without the benefit of any evidence as to the reason for issuance of the dispersal order, the trial court declared § 5502 to be unconstitutionally vague on its face, and granted appellees' motion to quash. Appellees were then tried on three remaining counts of their indictment not herein relevant.[2] Without knowing in what respects the police considered the conduct of appellees to be disorderly at the time of the police order to disperse, it is my view that this Court cannot properly resolve the issues involved in this constitutional attack upon § 5502.

As the Opinion of Mr. Justice O'Brien correctly suggests, ante at p. 276, n. 3, § 5502 must be read *in pari materia* with Section 5503(a) of the Pennsylvania Crimes Code, 18 Pa.C.S. § 5503(a). Section 5503(a) contains four subsections each setting forth a distinct type of conduct which, if engaged in with the intent to cause public inconvenience, annoyance or alarm, constitutes the offense of disorderly conduct.[3] When these

public servants of said Borough of Wilkinsburg, and being duly authorized and empowered to issue and give said order of dispersal as aforesaid, all of which is against the peace and dignity of the Commonwealth of Pennsylvania."
Darryl Fulton's indictment was cast in the same general language.

2. Because all charges concerning § 5502 had been dismissed, no evidence was taken to establish the elements of that offense. Indeed, the evidence adduced at trial was introduced solely for the purpose of proving violations of other sections of our crimes code. Neither does the indictment, cast as it was in the general statutory language of § 5502, shed any light on the specific nature of appellees' conduct. *See* note 1, *supra*. The record before us, then, may not properly be relied upon in determining precisely what in appellees' conduct the police considered to be disorderly at the time of the issuance of the order.

3. Section 5503(a) provides:
A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
(1) engages in fighting or threatening, or in violent or tumultuous behavior;

subsections of § 5503(a) are read into § 5502, a dispersal order *is* properly issued under § 5502 only if three or more persons are intentionally engaged in conduct which satisfies any one of the four definitional components of § 5503(a). It follows, then, that the constitutionality of § 5502 depends upon the constitutionality of the incorporated subsections of § 5503(a). These distinct definitional subsections, however, present disparate constitutional questions. For example, two of these definitions could give rise to colorable claims that enforcement of the subsections could infringe on the exercise of the public's First Amendment freedoms, *e. g.*, "making unreasonable noise" § 5503(a)(2); "use of obscene language" § 5503(a)(3). On the other hand, the enforcement of the other two definitional subsections seemingly would not involve First Amendment problems, *e. g.* "engaging in tumultuous behavior". § 5503(a)(1). Because the record does not indicate which of these four subsections appellees are charged with violating, we cannot know which of these constitutional problems is posed by this appeal.[4]

Furthermore, I do *not* see how the Court could properly determine the appropriate standard to govern its review of § 5502, without first knowing which subsection of § 5503(a) is here involved. Appellees argue that § 5502 is facially overbroad in that it includes within its scope activity which may be protected by the First

> (2) makes unreasonable noise;
> (3) uses obscene language, or makes an obscene gesture; or
> (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

4. My Brother Roberts' suggestion that we may reach the merits at this juncture is not responsive to the fact that the four definitional subsections of § 5503(a) are separate and distinct. The First Amendment analysis he would have this Court undertake would be warranted only if appellees' indictment for violating § 5502 was predicated on conduct which is defined as disorderly by § 5503(a)(2) or (a)(3). As we cannot know this from the record, see n. 2 *supra*, I respectfully suggest that a constitutional analysis of § 5503(a) and, pari passu, of § 5502 as well, is premature.

Amendment of the Constitution of the United States and that it is facially vague in that it fails to give reasonable notice of the conduct it proscribes and, as a consequence, could be read as restricting or forbidding activity which is protected by the First Amendment. In short, appellees urge that § 5502 be scrutinized on its face, not in light of the application of the statute to the facts of this case.[5] Appellees' argument has merit, however, only if the 5503(a) conduct in which they were engaged when ordered to disperse was of the sort which could, arguably, be protected by the First Amendment. If, instead, appellees' conduct would violate a subsection of § 5503(a) which does not implicate the First Amendment, a facial analysis would be inappropriate, and the consti-

---

**5.** If a colorable claim is asserted that enforcement of a statute would infringe upon the exercise of protected First Amendment activity by the public, then a facial attack upon the statute may be proper. While the overbreadth and vagueness theories upon which appellees rely have distinct constitutional bases, they serve a common function when advanced to challenge a statutory provision which colorably infringes upon the public's exercise of First Amendment freedoms. The vice which both theories attack is an impermissible chilling effect on conduct which may be protected. Whether that effect is generated by statutory terms which, while definite, are too broad in sweep, or by statutory terms the sweep of which is unknown because the terms are too imprecise, the infringement on First Amendment freedoms is the same; members of the public are forced to risk criminal prosecution in order to engage in activity which may be protected by the First Amendment. The public's interest in guarding against such infringements is sufficiently important that any defendant may challenge the constitutionality of the language of the statute as it might be applied to the public at large, notwithstanding that his own actual conduct may not be protected by the First Amendment. As a consequence, a statute which is challenged on First Amendment overbreadth or vagueness grounds may be scrutinized by a court on its face, not in light of its application in the particular case before the court.

See *Lewis v. City of New Orleans,* 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974); *Coates v. City of Cincinnati,* 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971); *Thornhill v. Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); Note, *The First Amendment Overbreadth Doctrine,* 83 Harv.L.Rev. 884 (1970); Note, *Due Process Requirement of Definiteness in Statutes,* 62 Harv.L.Rev. 77 (1948); Note, *The Void for Vagueness Doctrine in the Supreme Court,* 109 U.Pa.L.Rev. 67 (1960).

tutional issues would have to be resolved in light of the application of § 5502 to the facts of appellees' case.[6]

Accordingly, I think the Court is quite correct in its order of remand.[7]

NIX, J., joins in this concurring opinion.

**6.** As a unanimous United States Supreme Court has recently said:

"It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand. [citation omitted]"

*United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706, 713 (1975).

See also *Commonwealth v. Heinbaugh,* 467 Pa. 1, 354 A.2d 244 (1976).

**7.** I would also make it clear that the Commonwealth should be allowed to amend the relevant portion of the indictment so as to include that subsection of § 5503(a) which is alleged to have been violated by appellees. Rule 213(b) of our Rules of Criminal Procedure, 19 P.S. (1975 Pamphlet) provides:

"(b) The indictment shall contain the official or customary citation of the statute and section thereof or other provision of law which the defendant is alleged therein to have violated; but the omission of or error in such citation shall not affect the validity or sufficiency of the indictment."

In light of our conclusion that § 5502 must be read *in pari materia* with § 5503(a), an indictment charging a violation of § 5502 must, under Rule 213(b), contain not only a reference to § 5502, but also a reference to the subsection of § 5503(a) which the defendant is alleged to have violated. Rule 213(b) makes it clear, however, that the Commonwealth's failure to include a reference to this subsection in appellees' indictment, *see* note 1 *supra,* does not "affect the validity or sufficiency of the indictment." Hence on remand the trial judge could properly allow the indictment to be amended. Rule 220, Pa.R.Crim.Proc., 19 P.S. (1975 Pamphlet).

"It is well settled that a defect of substance in an indictment cannot be amended and the indictment must be quashed. *Commonwealth v. Lawton,* 170 Pa.Super. 9, 84 A.2d 384 (1951). However, if the defect is one of form it can be amended. Pennsylvania Rules of Criminal Procedure, Rule 220, 19 P.S.Appendix. Rule 220 permits an amendment to an indictment if the amendment does not charge an additional or different offense." (footnotes omitted)

*Commonwealth v. Brown,* 229 Pa.Super. 67, 323 A.2d 845, 846 (1974). See also *Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960); *Commonwealth v. Bruce,* 230 Pa.Super. 507, 326 A.2d 628 (1974). *Cf. Commonwealth v. Lee,* 454 Pa. 526, 312 A.2d 391 (1973); *Commonwealth v. Lawton,* 170 Pa.Super. 9, 84 A.2d 384 (1951).

ROBERTS, Justice (dissenting).

I cannot agree that the decision on the vagueness challenge must be postponed. The challenged statute clearly involves first amendment rights and, for that reason, a facial attack on the statute may be entertained. Thus, this Court should now decide whether this statute is vague and remanding the case is unnecessary.

In *Commonwealth v. Heinbaugh*, 467 Pa. 1, 354 A.2d 244 (1976), we relied on *United States v. Powell*, 423 U. S. 87, 96 S.Ct. 316, 46 L.Ed.2d 228 (1976), and *United States v. Mazurie*, 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975), for the proposition that attacks on the specificity of statutes are generally to be considered against the specific conduct involved in the case. 467 Pa. at ——, 354 A.2d at 245. We quoted the U.S. Supreme Court in *Mazurie* that "vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand." 419 U.S. at 550, 95 S.Ct. at 714. The majority misapplies this proposition by failing to realize that the question whether first amendment rights are involved must be determined with reference to the statutory language.

In *Mazurie*, the U.S. Supreme Court was dealing with a statute governing sale of alcoholic beverages in "Indian country." It was clear that first amendment freedoms were not involved. In *Powell*, the statute proscribed the mailing of certain firearms. There, it was also clear that first amendment freedoms would not be chilled by enforcement of the statute. In both cases the decision whether first amendment freedoms were involved, i. e., whether a facial attack on the statute may be entertained, was made with reference to the conduct which the language of the statute may have reached. In the case before us the majority does not look to the language of the statute to determine if first amendment rights are "involved". The majority attempts to look to the facts of

this case for that determination. This method of analysis is, in my view, incorrect.

The fallacy of the majority's position is apparent from an examination of its circuitous consequences. The majority says facial attacks—without reference to the facts of the case—can be considered only when first amendment rights are involved. Then it remands the case for proceedings to remedy the "factual vacuum" to determine if first amendment rights are involved. The majority's result is tantamount to holding that the court needs facts to determine if a challenge to the statute without reference to the facts is allowed.

The vagueness doctrine encompasses two notions.[1] The first is that one should be able to determine from reading the statute what conduct is proscribed. Precision in the language prevents courts from determining ad hoc what is a crime and what is not. Prosecutions based on imprecise statutes are too dependent on discretion and are rife with potential for abuse and inconsistent adjudications.[2] The second prong of the vagueness doctrine deals with cases where the language of the statute is sufficiently precise yet it will frequently reach constitutionally protected conduct; its sweep will be overbroad.

It is clear, as to challenges based on overbreadth, that one whose conduct is not constitutionally protected in a given case may not assert that the statute could reach protected conduct in a hypothetical case. See, e. g., *Colten v. Kentucky*, 407 U.S. 104, 111, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972). Similarly, in attacks based on imprecise statutory language, where first amendment rights are not involved, the facial attack will only be en-

1. See Note, The Void-For-Vagueness Doctrine, 109 U.Pa.L.Rev. 67, 76 et seq. (1960). The Author of that Note, Anthony G. Amsterdam, classifies the vagueness cases as "true" uncertainty cases, e. g., *United States v. L. Cohen Grocery Co.*, 255 U.S. 81 (1921), and "spurious" uncertainty cases, e. g., *Winters v. New York*, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948).

2. See Note, The Void-For-Vagueness Doctrine, supra at 80–81.

tertained with reference to the facts of the case at hand. The question there becomes: does the alleged imprecision in the statute affect this defendant in this case.

However, when first amendment rights are involved in a case challenging the imprecision of the statutory language, the attack will be entertained without reference to the facts of the particular case. This is so because when a statute, by its terms, regulates first amendment freedoms there is a significant threat that the rights will be impinged either through direct proscription which the actor cannot anticipate by looking at the terms of the statute, or through a chilling effect because the actor will be less likely to exercise his rights for fear he will run afoul of a proscription whose dimensions are uncertain. When first amendment rights become intertwined with a statute whose language is vague there exists a constitutional issue which the court must resolve without deciding if the facts of the incident involved give the challenger standing. The mere fact that one is prosecuted under a statute which regulates conduct arguably within the ambit of the first amendment and whose terms are open to imprecise interpretation is sufficient to give the challenger standing to attack the statute as facially vague.

A constituent element of the offense with which appellees here were charged is that the person be involved in a course of disorderly conduct. Disorderly conduct is defined in the Crimes Code as:

"§ 5503. Disorderly conduct

(a) Offense defined—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(1) engages in fighting or threatening, or in violent or tumultuous behavior;

(2) makes unreasonable noise;

(3) uses obscene language, or makes an obscene gesture; or

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor."

Because the statute deals with expressions of various types, first amendment rights are involved and a facial attack on the statute may be made. By refusing to decide whether the language of the statute is unconstitutionally vague the Court unnecessarily expends judicial and professional resources by an unneeded remand, and inappropriately applies the "standing" requirement for such a vagueness claim.

JONES, C. J., joins in this dissenting opinion.

MANDERINO, Justice (dissenting).

I dissent. 18 Pa.C.S.A. § 5502 violates the very essentials of due process of law in that it "forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926). As such, this Court should declare Section 5502 unconstitutional on vagueness grounds.

Under Section 5502, a person is guilty of a crime if he or she fails to obey a police dispersal order given when "three or more persons are participating in a course of disorderly conduct which causes or may reasonably be expected to cause substantial harm or serious inconvenience, annoyance or alarm." By proscribing any conduct which "causes or may reasonably be expected to cause . . . serious inconvenience, annoyance or alarm," the statute fails to establish a specific definition of illegal activity and provides law enforcement officials with nothing more than a subjective test for making arrests.

Indeed, the statute is unclear and presently without benefit of our judicial clarification. What is "serious inconvenience, annoyance or alarm"? Those are all value words which depend entirely upon the personal views of each of us. What constitutes annoyance to one person is not always annoyance to another. Nor does inconvenience mean the same to all. For instance the sounds of a parade, or even the parade itself, may cause great public inconvenience to many, while at the same time be a source of pleasure to others. Therefore, since Section 5502 fails to give notice as to what acts are criminal and does not set standards to guide law enforcement officials in performing their duties, I would declare the statute unconstitutional, in violation of the due process clause of the Fourteenth Amendment.

The majority, however, declines from ruling on the constitutionality of Section 5502 because of the lack of any facts in the record on which to apply appellees' claim of vagueness. I disagree. A facial attack on a statute is indeed proper if the scope of the statute is so broad that it could be read as restricting or forbidding conduct which is protected by the First Amendment. *See Lewis v. City of New Orleans,* 415 U.S. 130, 94 S.Ct. 970, 39 L. Ed.2d 214 (1974); *Smith v. Goguen,* 415 U.S. 566, 94 S. Ct. 1242, 39 L.Ed.2d 605 (1974). Section 5502, as it now stands, without a narrowing interpretation by this Court, is certainly "capable of reaching expression sheltered by the First Amendment." *Smith v. Goguen,* 415 U.S. at 573, 94 S.Ct. at 1247, 39 L.Ed.2d at 612. Therefore, notwithstanding the fact that appellees' conduct might not fall within the boundaries of the First Amendment's protection, Section 5502 can be scrutinized on its face.

I therefore dissent. I would declare Section 5502 unconstitutional on grounds of vagueness.